UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACY LYNN PATRONIK, individually;

    Plaintiff,

-v-

No.
Hon.

RYAN PIESKE, in his individual capacity; TODD SWANKER, in his individual capacity; and CITY OF NORTON SHORES, a municipal corporation; jointly and severally,

    Defendants.

___

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, STACY LYNN PATRONIK, individually, by and through her attorneys, MUELLER LAW FIRM, by WOLFGANG MUELLER and JOHN WM. MARTIN, JR., and files her Complaint against the Defendants, RYAN PIESKE ("PIESKE"), in his individual capacity, TODD SWANKER ("SWANKER"), in his individual capacity, and CITY OF NORTON SHORES ("NORTON SHORES"), a municipal corporation, in this civil action, stating unto this Court as follows:

    1.    This is an action for damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, against Defendants, PIESKE, in his individual capacity; SWANKER,

in his individual capacity; and NORTON SHORES, a municipal corporation.

2. Jurisdiction is founded upon 28 U.S.C. § 1331.

3. Forum is proper based on the situs of the incident, which occurred in the CITY OF NORTON SHORES, within the Western District of Michigan.

4. At all pertinent times Plaintiff, STACY LYNN PATRONIK, was a United States citizen.

5. At all pertinent times, Defendants, PIESKE and SWANKER, were employed as Detectives by the NORTON SHORES Police Department ("NSPD"), a department of Defendant, NORTON SHORES, and were acting within the scope of their employment and under color of law.

6. PIESKE and SWANKER, as a sworn police officers, had taken an oath, the Law Enforcement Code of Ethics, that stated in pertinent part: *"As a sworn police officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice."*

7. Defendant, NORTON SHORES, at all relevant times, was a municipal corporation organized under the laws of the State of Michigan.

## GENERAL ALLEGATIONS

8. On or about March 30, 2019, Plaintiff placed a Wyze-brand motion

2

sensitive camera in her bedroom, with her husband, Mark Sorenson's permission, because she suspected one of her two foster children of stealing items from the bedroom.

9. The Wyze camera pairs with an application on the person's cellular phone, thus allowing the user to remotely view a live feed from the camera, which takes 12-second video clips anytime it detects motion and sends the user the "alert videos" through the application.

10. On April 12, 2019, Plaintiff drove to the Norton Shores Police Department and gave a statement to Detective Todd Swanker that she had observed her husband, Mark Sorenson, sexually assault their adopted son.

11. Based upon information and belief, Pieske or Swanker was the Officer-in-Charge of the investigation.

12. Swanker would later testify that Plaintiff told him she observed her husband assault the minor child on April 1 through live-feed footage from the Wyze camera and, again, on April 11 via recorded alert videos.[1]

13. Plaintiff provided the police with her telephone so they could download the video feeds. The police extracted 12 alert videos of the April 11 assault and a screenshot of the April 1 assault from the Wyze cloud-based site that

---

[1] Based on Plaintiff's report of her husband's activities, Mark Sorensen pleaded guilty to two counts of rape of a child under 13 years of age and was given a sentence of 15–34 years in prison.

had been saved to Plaintiff's phone.

14. On April 16, 2019, Plaintiff was interrogated for over two hours by Swanker and Pieske. Plaintiff, who had no interactions with the criminal justice system throughout her life, repeatedly denied that she had deleted any evidence and stressed that she provided the police with all the evidence she had of her husband's criminal acts. She repeatedly told the officers that she did not recall seeing any alert videos from the April 1 incident and that she only viewed the incident on the live feed.

15. Pieske then lied and told Plaintiff that he had extracted information from the phone that affirmatively showed that Plaintiff had deleted alert videos from April 1 depicting her husband's sexual assault of her child.

16. Finally, after repeated aggressive and threatening behavior by Pieske, including multiple lies that he had evidence she deleted videos, Plaintiff broke down and acknowledged that she may have deleted "three or four videos" depicting the April 1 assault.

17. At Plaintiff's subsequent criminal trial, Pieske admitted that prior to his interrogation, he did not find a single download of an April 1 "alert video," nor any data showing that one had been downloaded and later deleted.

18. Pieske also admitted that when he subpoenaed the manufacturer, Wyze, for its records of the April 1 videos, he learned that the service is cloud-

4

based, and that any videos that are not downloaded are deleted after fourteen days pursuant to Wyze's data storage policy.

19. Thus, at the time Pieske and/or Swanker applied for a warrant for Plaintiff's arrest, he knew that absent Plaintiff's "confession," neither Defendant had evidence to suggest that Plaintiff had downloaded, much less deleted, any videos of the suspected April 1 assault.

20. In fact, at the time Pieske and/or Swanker applied for a warrant for Plaintiff's arrest, both Defendants knew that the screenshot of the suspected April 1 assault that was saved to Plaintiff's phone had been saved from the Wyze site. It had never been independently saved to Plaintiff's phone.

21. Therefore, at the time Pieske and/or Swanker applied for a warrant for Plaintiff's arrest, both Defendants knew that they did not have any evidence to support the felony crime of destruction of evidence, MCL 750.483a(5)(a), which states that a person shall not "knowingly and intentionally remove, alter, conceal, destroy, or otherwise tamper with evidence to be offered in a present or future official proceeding."

22. Defendants' police reports were relied on by the prosecutor in determining that probable cause existed for Plaintiff's arrest. The reports, however, did not contain any statement that Pieske and Swanker had no evidence independent of Plaintiff's "confession," that a crime had been committed.

5

23. Pursuant to Michigan law, on June 13, 2019, either Pieske or Swanker swore to facts in support of a warrant before Mag. Judge John Wiewiora.

24. At no time during the "swear to" did Pieske or Swanker tell the judge that there was no independent corroborating evidence to support Plaintiff's "confession" that she committed the crime of violating MCL 750.483a(5)(a).

25. On and before April 16, 2019, NORTON SHORES, by and through its final policymakers, had a custom and policy to authorize, condone, tolerate, and approve illegal and unconstitutional actions by NSPD officers, detectives, and command staff.

26. The illegal and unconstitutional actions and practices included but were not limited to:

   a. Introducing false evidence to secure "confessions" without the police officers knowing the elements of a crime to determine whether probable cause existed;

   b. Making false statements and omitting material facts that a prosecutor or magistrate judge would want to know to manufacture probable cause for an arrest warrant;

   c. Seeking arrest warrants without obtaining or establishing the evidentiary basis to establish probable cause that a crime occurred and that the suspect was the perpetrator of the crime;

   d. Failing to train sergeants and police officers to properly disclose exculpatory and/or impeachment evidence to the prosecutor in a criminal case, as the handling of such evidence is an everyday occurrence for police officers and detectives; and

  e. Other acts of commission and omission that will become known through the discovery process.

27. Defendant, NORTON SHORES, through its final policymakers, further maintained a custom and policy of failing to adequately train, supervise, and/or discipline officers concerning proper and constitutionally adequate interrogation techniques, identifying whether probable cause existed to seek an arrest warrant, and the handling and conveyance of exculpatory and impeachment evidence.

28. NORTON SHORES's customs and policies, set forth above, demonstrated deliberate indifference to the constitutional rights of its citizens, including Plaintiff, and were the moving force behind the individual Defendant's constitutional violations.

29. Based solely on her alleged "confession," arising from Pieske and Swanker's misconduct, a Muskegon County Circuit Court jury convicted Plaintiff of tampering with evidence, a felony, and failure to report suspected child abuse or neglect, pursuant to MCL 722.633(2), a misdemeanor.

30. On January 3, 2020, Plaintiff was given a sentence of 12 months for her conviction on the tampering with evidence charge and one day for her conviction for failure to report suspected abuse or neglect.

## POST-TRIAL DEVELOPMENTS

31. Plaintiff appealed the tampering with evidence conviction on the

7

grounds that there was no independent evidence to indicate that the crime of tampering with evidence had occurred.

32.     The Michigan Court of Appeals vacated the conviction on February 10, 2022.  *See People v. Sorenson*, No. 353362, 2022 WL 413607 (Mich. App. Feb. 10, 2022).

33.     In its opinion, the *Sorenson* court noted that there was no evidence other than Plaintiff's alleged "confession" that she had affirmatively deleted videos of the April 1 assault.  "[W]e conclude that the *corpus delecti* rule was not satisfied in this case and that the admission of defendant's confession was plain error. Defendant was prejudiced by this error because, for the reasons discussed, absent her confession there was insufficient evidence to show that she intentionally destroyed or tampered with evidence.  Therefore, she was entitled to a directed verdict as to that charge."  *Id*. at *4.

34.     The prosecution appealed the Court of Appeals' decision to the Michigan Supreme Court.

35.     On October 4, 2022, the Michigan Supreme Court denied leave to appeal because it was "not persuaded that the question presented should be reviewed by this Court."  *People v Sorenson*, 979 NW2d 828 (2022).

36.     On February 6, 2023, criminal charges were dismissed.

37.     From her arrest on or about June 17, 2019, to February 6, 2023,

STACY LYNN PATRONIK spent **1,331 days**, or **3 years, 7 months, and 21 days** seized, restricted, and stigmatized for a crime she did not commit.

    38.    Due to the conduct of Defendants, PIESKE and SWANKER, and the policies and customs of the CITY OF NORTON SHORES, as set forth below, Plaintiff, STACY LYNN PATRONIK, suffered the following injuries and damages:

    a.    Suffering a deprivation of liberty by being wrongfully seized for a period of over 3.5 years;

    b.    Severe emotional distress for the period from her arrest to the present, including, but not limited to: the emotional distress of being charged with destroying evidence of sexual abuse of her child and being wrongfully convicted of a felony the Defendant knew she did not commit;

    c.    Loss of custody of her children;

    d.    Physical manifestations of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

    e.    Fright, shock, indignity, humiliation, outrage, and embarrassment of being wrongfully charged and jailed;

    f.    Loss of enjoyment of daily activities;

    g.    Loss of employment opportunity, past income, and future earning capacity;

    h.    Restricted and/or complete loss of all forms of personal freedom and physical liberty, including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, personal fulfillment, sexual activity, family relations, recreational activities, and

        personal expression;

   i.    Being reviled by the community following press coverage of her arrest and conviction;

   j.    Many of Plaintiff's injuries and damages are likely to be permanent;

   k.    Other damages which may be revealed through discovery.

## COUNT I

## FEDERAL MALICIOUS PROSECUTION BY PIESKE AND SWANKER

39.    Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

40.    At all times, Plaintiff had a constitutional right, guaranteed by the 4th and 14th Amendments, to be free of illegal seizure and continued detention without probable cause, based on fabricated evidence, false statements, and/or material omissions which were knowingly or recklessly made to manufacture probable cause for an arrest and conviction.

41.    Defendants, Pieske and Swanker, were under a constitutional duty to make truthful statements to the prosecutor and magistrate judge to establish probable cause for an arrest warrant.

42.    Defendants, Pieske and Swanker influenced the initiation and continuation of prosecution by their conduct, which included:

   a.    Not telling the prosecutor or judge that they knew there was no independent evidence to corroborate Plaintiff's

10

        alleged confession;

    b. Not telling the prosecutor or judge that they knew there was no independent evidence to corroborate that the crime of intentional destruction of evidence had occurred;

    c. Other false statements or omissions of material facts that were knowingly or recklessly made that will be discovered during this lawsuit.

43. Plaintiff's right to be free from seizure and continued detention based solely on an uncorroborated confession was clearly established long before June 17, 2019. *See United States v. Marshall*, 863 F.3d 1285, 1287 (6th Cir. 2019) ("This Circuit has long followed the principle enunciated in *Opper* and *Smith,* that a defendant's extrajudicial, post-offense statements must be corroborated with independent evidence in order to assure reliability and truthfulness.") (citing *Opper v. United States*, 348 U.S. 84 (1954) and *Smith v. United States*, 348 U.S. 174 (1954)).

44. But for Defendants' false statements and material omissions, probable cause for an arrest warrant was lacking.

45. Dismissal of the criminal charges by the prosecutor constitutes a favorable termination of the criminal case.

## COUNT II

## STATE LAW MALICIOUS PROSECUTION BY PIESKE AND SWANKER

46. Plaintiff incorporates by reference each preceding paragraph as if

11

fully stated herein.

47. The underlying criminal conviction for tampering with evidence against Plaintiff ultimately terminated in her favor with a dismissal of the charges in state court on February 6, 2023.

48. The criminal investigation and prosecution were undertaken without probable cause or good faith and with malice. The investigation and prosecution lacked probable cause, as there was no evidence that Plaintiff had knowingly and intentionally destroyed any evidence.

49. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff was charged and convicted of a felony that she did not commit, causing her to suffer the special injuries and damages set forth above.

50. Pieske's conduct constitutes malicious prosecution under MCL 600.2907 and Michigan common law.

## COUNT III

## NORTON SHORES' *MONELL* LIABILITY

51. Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

52. NORTON SHORES had a custom and policy to authorize, condone, tolerate, and approve illegal and unconstitutional actions by NSPD officers and command staff, including, but not limited to:

12

    a.    Knowingly and deliberately fabricating evidence to secure a "confession" and manufacturing probable cause to arrest and/or strengthen a case for conviction;

    b.    Seeking arrest warrants despite the officers' knowledge that probable cause was lacking;

    c.    Allowing officers and command staff to make false statements and omissions of material facts ("lies by omission") in reports and statements in support of probable cause.

53. NORTON SHORES further created policies, practices, and customs, including a failure to provide adequate training to its police officers, including Defendants, Pieske and Swanker, in the manner set forth above, which demonstrated "deliberate indifference" to the constitutional rights of its citizens and was the moving force behind the individual Defendant's violations of Plaintiff's constitutional rights.

54. Determining whether to seek an arrest warrant by knowing that the evidence in a case meets the elements of the sought-after criminal charge is a routine, everyday task for a police detective.

## **PRAYER FOR DAMAGES**

WHEREFORE, Plaintiff, STACY LYNN PATRONIK, prays for damages, jointly and severally as to all Defendants, including:

    a.    Past and future compensatory damages, jointly and severally, against all Defendants in an amount to be determined by a jury;

    b.    Punitive damages as to Defendants, PIESKE and SWANKER, in

13

      an amount to be determined by a jury;

c.   All damages pursuant to MCL 600.2907 and the common-law of the State of Michigan.

d.   Reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988;

e.   The costs and disbursements of this action pursuant to 42 U.S.C. § 1920; and,

f.   Such other and further relief as is just and proper.

                              Respectfully submitted,

                              s/Wolfgang Mueller
                              WOLFGANG MUELLER (P43728)
                              JOHN WM. MARTIN, JR. (P42266)
                              MUELLER LAW FIRM
                              Attorneys for Plaintiff
                              41850 W. Eleven Mile Road, Ste. 101
                              Novi, MI 48375
                              (248) 489-9653
                              wolf@wolfmuellerlaw.com
Dated: August 23, 2024           john@wolfmuellerlaw.com

## **JURY DEMAND**

Plaintiff, by and through her attorneys, MUELLER LAW FIRM, demands a jury trial in this matter.

                                              Respectfully submitted,

                                              s/Wolfgang Mueller
                                              WOLFGANG MUELLER (P43728)
                                              JOHN WM. MARTIN, JR. (P42266)
                                              MUELLER LAW FIRM
                                              Attorneys for Plaintiff
                                              41850 W. Eleven Mile Road, Ste. 101
                                              Novi, MI 48375
                                              (248) 489-9653
                                              wolf@wolfmuellerlaw.com
Dated:  August 23, 2024                john@wolfmuellerlaw.com